**WO**                                                                                                                    NN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joel Folio, <br><br>   Plaintiff, <br><br> vs. <br><br> Michael J. Astrue, Commissioner of Social Security, <br><br>   Defendant. | No. CV 06-2700-PHX-EHC <br><br> **ORDER** |

This is an appeal from the decision of the Commissioner of the Social Security Administration ("SSA") to deny Joel Folio Title II disability benefits and Title XVI Supplemental Security Income benefits of the Social Security Act. Pending before the Court are Plaintiff's motion for summary judgment (Dkt. 18) and Defendant's cross-motion for summary judgment. (Dkt. 25).

**I. INTRODUCTION**

Plaintiff Folio's procedural history involves three applications for SSA disability benefits:

1. On January 22, 1996, Folio applied for disability benefits (Tr. 292) and did not appeal the October 28, 1997 denial by the Administrative Law Judge ("ALJ"). Because one of the issues before the Court involves res judicata, which refers back to this first denial, an assessment of this decision and its findings are necessary.

2. On October 17, 2000, Folio again applied for disability benefits (Tr. 23) and appealed the ALJ's unfavorable decision, dated August 29, 2002, to the United States District Court, CV 03-1559-PHX-FJM. The court remanded for further

proceedings, and the Commissioner again denied benefits. Folio appealed, and the matter is now before this Court.

3. While still on appeal in the second application, Folio applied for disability benefits a third time.  His application was approved for Supplemental Security Income Disability Insurance (SSI") benefits, Title XVI, and was found disabled as of November 21, 2000.[1] This third application is not before the Court.

Folio does not contest the denial of the first application. The Commissioner and Folio agree that the period in question begins October 29, 1997, the day after Folio's first application was denied. The parties differ on the relevant period's end date. The Commissioner contends the period ends December 31, 1999, his date last insured.[2] Folio contends the end date is November 20, 2000, the day before his SSI benefits were approved. Because the ALJ decision being appealed before the Court addresses the time period ending on December 31, 1999, which is Folio's date last insured, the Court adopts it as the relevant time period.[3]

## II. STANDARD OF REVIEW

"The Social Security Administration's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir.2006); 42 U.S.C. §§ 405(g), 1383(c)(3)). "Substantial

---

[1] Documentation regarding the third application and favorable decision is absent from the record; it comes solely from Plaintiff's Statement of Facts ("SOF"), (Dkt. 19, p. 2), and testimony by Folio and his attorney.  (See Tr. 629). Folio's lawyer testified that Folio has received SSI benefits since November 20, 2000. The Commissioner does not make any reference to the third application but neither does he dispute it.  Thus, it is deemed an undisputed fact. (See Dkt. 26).

[2] The "date last insured" is the last day of coverage based on a claimant's years of employment.  In this case, Plaintiff's date last insured is December 31, 1999 (Tr. 292), and he must therefore establish disability status on or before that date. (Tr. 24).

[3] Unlike Title II Social Security Disability Insurance Benefits that are based on a claimant's prior income, Title XVI SSI benefits are need-based. See 20 C.F.R. § 404.110, 42 U.S.C.A. § 1381.

- 2 -

evidence is more than a mere scintilla but less that a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (internal quotation marks and citation omitted). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Orn at 630. (internal quotation marks and citations omitted).

## III.  FACTS

### A.  Education and Employment Background

Folio was born on November 21, 1950 (Tr. 300), and has a ninth grade education. (Tr. 598). His past relevant work includes work as a pool repairman (medium/semi-skilled) and truck driver (heavy/unskilled). (Tr. 598).

### B.  First Application for Benefits

Folio filed an application for benefits on January 22, 1996, alleging he stopped working on January 28, 1995, due to a herniated disc, back pain, diabetes, numbness in the legs, a hernia, cysts, and arthritis. (Tr. 292). ALJ Blair agreed with all of his alleged severe impairments with the exception of the hernia. (See Tr. 301). She also found that although there was some history of depression and related counseling, Folio did not have a "severe mental impairment."[4] (Tr. 297). ALJ Blair relied on the following facts:

- May 1993 - Medical records from the Arizona Healthcare Cost Containment System ("AHCCS") indicate Folio had a history of right and left inguinal[5] hernias as well as pilonidal[6] cysts. (Tr. 182-86). He complained of pain in both groins, the doctor found masses in both, and Folio underwent surgery to repair a "large right inguinal hernia." He was also treated for diabetes. (See Tr. 293).

---

[4] The ALJ found that Folio did not have a "longitudinal history of mental illness" and observed he did not follow through with counseling. She also noted he did not assert memory or concentration problems and had no history of "deterioration or decompensation in work or work-like setting." (Tr. 297).

[5] "Inguinal" pertains to, or is "situated in the groin." The Random House College Dictionary 685 (Revised Ed. 1975).

[6] "A 'pilonidal' cyst is a 'hair-containing . . . cyst.'" (Dkt. 26, p. 3) (quoting Dorland's Pocket Medical Dictionary 210 (25th Ed. 1995)).

- 3 -

- <u>April 1996</u> - Cervical and lumbar x-rays showed moderate degenerative disc space changes and mild spurring/narrowing, respectively. (Tr. 219).

- <u>May 1996</u> - Folio was diagnosed by Dr. Kevin S. Ladin, an examining, non-treating physician and an SSA referral, with chronic mechanical low back pain; history of cyst excision with draining ulcer in the sacral coccygeal region; draining left foot ulceration; and history of non-insulin dependent diabetes mellitus ("NIDDM"). (Tr. 215, 294). The doctor recommended further evaluation to rule out deeper pathologies concerning the draining ulcer in the sacral coccygeal region and draining left foot ulceration. (Tr. 294). He observed a moderate limp and opined that Folio should avoid anything involving prolonged standing, walking, sitting, or repetitive stooping, bending, or lifting. (Tr. 215-16).[7]

- <u>May 1996</u> - Folio was referred to George DeLong, Ph.D. by the SSA for a psychological evaluation. The doctor diagnosed Adjustment Disorder with Depressed Mood and substance abuse by report. He described Folio as a homeless individual who is not entirely truthful about his history of chemical dependency. (Tr. 227). The doctor opined that, "upon casual observation," Folio did not exhibit signs that he was incapacitated by pain, and the only "vocationally relevant" sign was frequent tearfulness. (Tr. 227).

- <u>April 1997</u> - The SSA referred Folio to K. Thomas Nelson, Ph.D. for another psychological evaluation. Folio reported he had depressive anxious disorder, occasionally heard voices, thought about suicide, and participated in counseling.[8] Dr. Nelson diagnosed Adjustment Disorder with depressed mood and indicated that further evaluation was required before ruling out a Dependant Personality disorder. (Tr. 244). Dr. Nelson suspected Folio exaggerated his symptoms.[9] A schizophrenic pathology test score was so extreme that it was likely invalid; there was no clinical observation or symptomatology that would correlate with the test result.

---

[7] Approximately one week after the examination with Dr. Ladin, an SSA non-examining medical consultant reviewed the medical records and opined that Folio could perform medium exertional work, yet acknowledged that Folio limps due to an ulceration on his left foot, and has moderately restricted range of motion in his lumbosacral spine, paralumbar muscle spasm, and an open ulcer in the coccygeal region. (Tr. 127-28).

[8] Dr. Nelson reviewed the Jewish Family and Children's Service counseling records: Folio attended six sessions 1997, was depressed and suicidal, and was diagnosed with an adjustment disorder, which was later changed to depression. On April, 4 1997, he was discharged due to loss of contact.(Tr. 270-72).

[9] The doctor observed heavy sobbing but no sign of tears.

- 4 -

ALJ Blair found that Folio could no longer perform his past relevant work,[10] because his prior work consisted of medium to heavy exertional activity, but that he had the Residual Functional Capacity ("RFC")[11] to perform a nearly full range of sedentary work.[12] (Tr. 300-01). She found Folio was "not entirely credible" with regard to his assertions of disabling impairment and pain. (Tr. 301). Thus, she found he did not have a disability as defined by the SSA.[13] ALJ Blair noted Folio would still fall in the sedentary work category regardless of transferability of work skills; that is, she did not need to assess whether transferability of work skills from his prior employment existed to find Folio was not disabled.[14] (Tr. 300, 302).

## C. Second Application for Benefits[15]

### 1. First ALJ Decision

---

[10] "Past relevant work" is work performed within the past 15 years, that was substantial gainful activity, and that lasted long enough to acquire sufficient ability to do the job. 20 C.F.R. § 416.960(b)(1).

[11] The RFC is defined as what the claimant can still do despite limitations due to physical and/or mental impairments. (See Tr. 21).

[12] Folio's capabilities did not encompass the full range of sedentary work due to non-exertional limitations, an inability to bend, stoop, or lift repetitively. (Tr. 300-01).

[13] A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

[14] "Based on an exertional capacity for sedentary work, and the claimant's age, educational background, and work experience, [the SSA regulations] would direct a conclusion of 'not disabled.' The same result would be reached *without regard* to the skill level of Mr. Folio's former work or to questions pertaining to transferability of work skills." (Tr. 302) (emphasis added).

[15] The ALJ relied on the facts presented in the first application for benefits, as well as new evidence presented in the second application as set forth in this section.

Folio filed the second application for benefits on October 17, 2000 (Tr. 23), arguing his condition had worsened. (Tr. 613). Res judicata operates if a previous application was denied; a rebuttable presumption of non-disability applies, unless the claimant establishes "changed circumstances." (See Tr. 23-24). Such changes include a different age category, worsening symptoms, or an additional impairment not previously considered. (See Tr. 24). In addition to worsening symptoms, Folio had moved up to an older age category since the first application. ALJ Robins agreed with Folio that "changed circumstances" existed. (Tr. 24). He also found that Folio possessed transferable skills from his previous work, and concluded Folio had the RFC to perform a significant range of light to sedentary work. (Tr. 29, 31).

This time Folio sought judicial review. On June 24, 2004, the district court relied on Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988) to find that res judicata applies not only to the ultimate determination of disability, but to certain subsidiary findings as well. (Tr. 614). The court noted that ALJ Robins found Folio could perform light to sedentary work, whereas ALJ Blair found he was limited to sedentary work only. The court also pointed out that ALJ Robins found Folio had transferable skills from his past relevant work, whereas ALJ Blair found he did not possess transferable skills.[16] (Tr. 614). Therefore, the court found that ALJ Robins did not properly apply the Chavez principles of res judicata, reversed the Commissioner's decision, and remanded for further proceedings. (Tr. 615).

### 2. Second ALJ Decision

ALJ Robins conducted a second hearing and issued a revised decision on June 16, 2005, again denying benefits. (Tr. 607). Applying res judicata, ALJ Robins found, as did ALJ Blair, that Folio's RFC was limited to sedentary work. He correctly observed that the issue of transferable skills had not been addressed in the first

---

[16] As noted in section III.B, *supra*, ALJ Blair actually did not find that Folio did not possess transferable skills, but rather, did not assess whether he had such skills.

decision; thus, res judicata did not apply.[17] ALJ Robins found that Folio indeed possessed transferable skills, relying on the vocational expert ("VE") who testified at the 2002 hearing. The VE testified that Folio had skills in electrical work as a pool repair technician and those skills were transferrable to work in electrical assembly, for which there existed a significant number of jobs in the national economy. (Tr. 607).

ALJ Robins found the combination of three impairments was "severe": diabetes mellitus; degenerative disc disease; and low back pain. (Tr. 606). He found medical support for these conditions before, during, and after the relevant time period, October 29, 1997 through December 31, 1999, but noted that physical and psychiatric treatment records during the relevant time period were minimal. (See Tr. 600). He added that there was no medical treatment, or evidence that he sought treatment, in the record to support Folio's other alleged impairments: ulcers; liver disease; and depression with memory problems.(Tr. 600). He did observe, however, that Folio suffered from cysts and abscesses before and after the relevant period.[18] (See Tr. 600).

### 3. Treating physicians
#### a) William T. Holland, M.D. & Nestor Nazareno, M.D.

Drs. Holland and Nazareno work together and it appears that both have treated

---

[17] See note 16, *supra*.

[18] ALJ Robins acknowledged during the first hearing in 2002, that pilonidal cysts recur. Folio had testified that he has had cysts removed "from his rear end," noting that they are "as big as a grapefruit," and therefore could not likely sit for significant periods of time. (See Tr. 65).

Folio. They began treating him in June of 1996.[19] (See Tr. 485-501). The medical records reflect treatment visits in July and November 1996; February, April, and July 1997;[20] and after a three-year hiatus, he returned in December 2000[21] and followed up in January and February 2001.[22]

On February 20, 2001, Dr. Nazareno recommended permanent disability, noting Folio has "NIDDM, chronic active Hepatitis C, Hypertension, HCVD and chronic non-healing wound at the coccyx and is status post removal of a pilonidal cyst in July of 2000. (Tr. 502). Dr. Nazareno opined that his "medical problems are stable"; that Folio is "fully aware of medication side effects"; and that "[h]is prognosis is fair to good, depending largely on how he controls his Diabetes." (Tr. 502). Furthermore, the doctor opined that his disabling condition dated back to his date last insured in December 1999.

### 4. Examining non-treating physicians

#### a) George DeLong, Ph.D.

The SSA referred Folio to its examining psychologist, George DeLong, Ph.D., a second time in April 2001 for evaluation. Dr. DeLong offered an explanation to Dr.

---

[19] Folio reported he had been diagnosed as having a herniated disc ten years earlier. The treatment notes indicate he had surgery to remove a hernia on the right and had "a large left inguinal hernia . . . [and] a draining pilonidal cyst which appears to have had multiple surgeries in the past." Folio was referred for surgery consult. (Tr. 491).

[20] The doctor prescribed "Darvocet for severe pain" and noted Folio's wife, with their children, left him, and he was living with a friend. (Tr. 490). Folio told the doctor he needed to wait on the surgery until his living arrangements were stable. (Tr. 488).

[21] Under the column "GU/Rectal," the doctor observed a "[b]ig, hole/wound . . . [undecipherable]." The doctor also referred Folio to Podiatry for a foot callous. (Tr. 487).

[22] Folio was diagnosed with active Hepatitis C and past exposure to Hepatitis B. (Tr. 485). His Vicodin prescription was refilled.

1 Nelson's extreme test result from 1997 that suggested exaggeration on Folio's part[23]:
2 elevated scores on this particular scale are "frequently observed among individuals
3 with a history of homelessness," and Folio's two-year period of homelessness could
4 have reflected "his actual life experiences rather than a tendency to exaggerate
5 psychiatric symptoms." (Tr. 601). ALJ Robins was not persuaded and instead
6 adopted Dr. Nelson's evaluation which, the ALJ observed, included other indications
7 that Folio exaggerated.

8 Dr. DeLong opined that Folio was "frank and forthright about his physical
9 limitations and pain as well as his depressive symptoms." (Tr. 517). He diagnosed
10 a moderate depressive disorder, polysubstance abuse, and a developmental
11 academic disorder. (Tr. 516). Lastly, Dr. DeLong opined that Folio was seriously
12 limited in his ability to work.[24] (Tr. 518-19). ALJ Robins found there was "no
13 evidence" to suggest that Dr. DeLong's opinion of more significant limitations "relate
14 back 15 months prior to December 31, 1999." (Tr. 601).

### *b) Paul C. Geimer, D.O.*

16 Dr. Geimer examined Folio, also upon SSA referral, on December 5, 2000, and
17 opined that Folio was limited to only four hours of sitting per day and two to four
18 hours of standing and/or walking. (Tr. 464-65). ALJ Robins did not find Dr. Geimer's
19 opinions persuasive, stating there was "no indication that the limitations provided
20 were intended to relate back to December 31, 1999." (Tr. 603).

### 5. Plaintiff's credibility

22 Besides the various inconsistencies regarding reported drug use and Dr. Nelson's
23 test result indicating exaggeration, ALJ Robins observed that Folio sustained a

---

[23] A schizophrenic pathology test score was so extreme that it was likely invalid; there was no clinical observation or symptomatology that would correlate with the test result.

[24] For example, he opined that Folio's abilities to maintain attention/concentration and deal with work stresses were "seriously limited" to "poor." (Tr. 518).

conviction for providing false information to the police and did not seek medical treatment, even though he had obtained insurance coverage through AHCCCS. Consequently, ALJ Robins found Folio was "not totally credible" with regard to his assertions of disabling impairment and pain.

## IV. ANALYSIS

The ALJ must engage in a five-step evaluation pursuant to 20 C.F.R. §§ 404.1520 and 416.920 to determine whether the claimant is disabled. The claimant has the burden of demonstrating the first four steps:

1. The claimant has not engaged in substantial gainful activity since filing for benefits;

2. the claimant's alleged impairment, or combination of impairments, is sufficiently severe and meets the duration requirement;[25]

3. if a severe impairment is found, it meets or equals an impairment found in the Listing of Impairments and meets the duration requirement; if so, the claimant is disabled and the analysis ends. If not,

4. after considering all impairments in combination and determining the claimant's Residual Functional Capacity ("RFC"), the claimant can no longer perform past relevant work; and

5. if the claimant establishes Step 4, the burden shifts to the SSA to demonstrate that the claimant is not disabled and can still engage in some type of substantial gainful activity that exists in significant numbers in the national economy. See 20 C.F.R. § 404.1560(c)(2).

Folio contends he could not work, during the period in question, due to the following severe impairments: diabetes mellitus, degenerative disc disease, hepatitis C, chronic non-healing wounds at the coccyx, status post removal of pilonidal cyst, osteomyelitis of the spine, and depression. According to Folio, he was "homeless, did not care if he lived or died, had suicidal thoughts, lacked insight

---

[25]Unless the impairment is expected to result in death, the duration requirement is at least 12 months, or is expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509.

- 10 -

into his condition, did not care about life and/or medical treatment, and lacked the financial ability to obtain medical care. (Dkt. 19, p. 2).

Folio argues that ALJ Robins erred in Step 2 because he did not find Folio's psychiatric disorder or ulcers to be severe impairments. He further contends that the ALJ erred in Step 5 by rejecting the opinion of Folio's treating physician and an examining physician because the evaluations and opinions were completed after Folio's date last insured. Lastly, he argues that the ALJ ignored the District Court's order to apply res judicata principles in his second decision. (See Dkt. 18).

### A. Res Judicata

Folio argues that the ALJ did not properly apply the Chavez principles of res judicata. See Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988) (res judicata applies not only to the ultimate determination of disability, but to certain subsidiary findings as well). He contends ALJ Blair found that Folio did not possess transferable skills from his past relevant work. As already noted, however, a close reading of the decision reflects she did not address the issue.[26] ALJ Robins did properly change Folio's RFC to sedentary work only, recognizing the res judicata application of ALJ Blair's finding.

### B. Physicians' opinions

"By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." See Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citing C.F.R. § 404.1527). The SSA has explained that an ALJ's finding that a treating source medical opinion is not well-supported by medically acceptable evidence or is inconsistent with substantial evidence in the record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. See Orn, 495 F.3d at 632 (citing § 404.1527).

---

[26] See note 16, *supra*.

The law in the Ninth Circuit is clear that the ALJ must defer to the treating doctor's opinion, even if controverted by another doctor, unless the ALJ makes findings setting forth specific, legitimate reasons for rejecting it that are based on substantial evidence in the record. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). ALJ Robins did not present specific, legitimate reasons for rejecting the permanent disability opinion of Dr. Nazareno because he did not address it at all. Presumably, in keeping with his rationale in rejecting Dr. Geimer's and Dr. DeLong's opinions, it did not relate back to the date last insured, approximately thirteen months after Folio's last date insured.

The Commissioner argues that any medical evidence that pre-dates the relevant period is immaterial; such evidence is included in the administrative record because it was relied upon by ALJ Blair in the first application for benefits. (Dkt. 26, pp. 2-3). The argument has merit, although it can indicate whether medical conditions diagnosed earlier persist over time. Medical and psychological evaluations generally do not project what a patient's condition might be in the future. Contradicting this assertion, ALJ Robins *exclusively* relies on opinions that pre-date the relevant period. He relied on Dr. Nelson's April 1997 opinion, rejecting Dr. DeLong's 2001 opinion. He also relied on Dr. Ladin's 1996 opinion, rejecting Dr. Geimer's 2000 opinion. More importantly, he rejects the only opinion from a treating physician, Dr. Nazareno, whose records reflect treatment before and after the relevant period. The ALJ's rationale that Folio did not generally seek medical treatment during the relevant period is satisfactorily addressed by the facts that he was homeless and depressed during that time. Moreover, rejecting post-expiration evaluations and opinions is contrary to the case law in the Ninth Circuit.

Case law establishes that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." Sampson v. Chater, 103 F.3d 918, 922 ( 9th Cir. 1996) (quoting Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988)). In fact, it is not uncommon that a

physician's examination completed two or more years after the insured status expiration date is considered relevant. See Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988) (citing several cases from other Circuits to support the court's conclusion). The record includes progressive worsening of Folio's symptoms of degenerative disc disease, diabetes, ulcers, and cysts, such that Folio was hospitalized in September 2000 for multiple medical conditions, (See Tr. 602), and eventually granted disability status in November 2000.

### C. **Plaintiff's Credibility**

"Pain of sufficient severity caused by a medically diagnosed anatomical, physiological, or psychological abnormality may provide the basis for determining that a claimant is disabled." Robinson v. Barnhart, 469 F.Supp.2d 793, 798 (D. Ariz. 2007) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)) (inner quotations and citations omitted). "Moreover, once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." Robinson, 469 F.Supp.2d at 798 (quoting Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (inner quotations, citations, and alteration omitted). It is undisputed that Plaintiff has several severe impairments that cause pain.

Furthermore, "unless the ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find the claimant not credible by making specific findings as to credibility and stating clear and convincing reasons for each. Robinson, 469 F.Supp.2d at 798 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883, (9th Cir. 2006) (inner quotations and citation omitted). Because the ALJ did not make a finding of malingering, to find Folio not credible requires specific findings as to credibility and clear and convincing reasons for each.

The ALJ's reliance on the test result suggesting exaggeration was reasonably explained by Dr. DeLong in light of Folio's homelessness. In addition, ALJ Robin's

observation that he did not seek medical treatment during the relevant period is adequately explained by Folio's homelessness and depression. There is sufficient evidence in the record to support Folio's depression. The various inconsistencies regarding reported substance abuse and the fact that he sustained a conviction for providing false information to the police are indicators that Folio is not always forthright. However, Dr. DeLong possessed all of this information when he opined that Folio was severely impaired in his ability to work.

ALJ Robins has not met the clear and convincing standard to support an adverse credibility finding. Given the complete record before the Court, Plaintiff's credibility does not support denial of his claim.

**VI. CONCLUSION**

The Court has reviewed the Commissioner's final decision under a substantial evidence standard and finds that the decision denying benefits is not supported by substantial evidence. Specifically, the ALJ made an unsupported credibility determination, gave little weight to the opinions of the more recent treating and examining physicians, and instead relied on earlier medical assessments which have little bearing on the relevant time period.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. 18) is **granted.**

**IT IS FURTHER ORDERED** that Defendant's Cross Motion for Summary Judgment (Dkt. 25) is **denied.**

**IT IS FURTHER ORDERED** that the case is remanded for an award of benefits.

DATED this 19th day of August, 2008.

Earl H. Carroll
United States District Judge